UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHEILA ROWELL, ET AL                                CIVIL ACTION

VERSUS                                              NO: 14-2392

SHELL CHEMICAL LP, ET AL                            SECTION: J(3)

**ORDER AND REASONS**

Before the Court is a *Motion to Remand* **(Rec. Doc. 12)** filed Plaintiffs, Sheila Rowell, et al ("Plaintiffs"), and an *Opposition* thereto (**Rec. Doc. 23)** by Defendants, Shell Chemical LP ("Shell") and International-Matex Tank Terminals ("IMTT") (collectively "Defendants"). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED WITHOUT PREJUDICE.**

**PROCEDURAL AND FACTUAL BACKGROUND**

This matter arises out of the alleged emission of noxious fumes from a chemical refining facility in St. Rose, Louisiana. Plaintiffs are an unquantifiable group of people who reside, work, or routinely visit the St. Rose area, located in St. Charles Parish, and in close proximity to the 1,000 acre chemical refinery facility ("the facility"), which is jointly

1

operated by Defendants, Shell and IMTT. Plaintiffs allege that as early as June 1, 2014, Defendants began emitting toxic substances from the facility, namely sulfur dioxide and asphalt fumes. Plaintiffs further allege that these fumes carried such a noxious and pungent odor that they "prevented Plaintiffs from venturing outside and enjoying the use of their properties with family and friends." (Rec. Doc. 12-2, p. 3). Plaintiffs also claim that exposure to these fumes and emissions caused certain Plaintiffs to suffer from physical side effects, such as "nausea, vomiting, headaches, eye irritation, and respiratory difficulties." (Rec. Doc. 12-2, p. 4).

   On September 11, 2014, three named Plaintiffs, Sheila Rowell, Gloria Riley, and Deanna Porter, filed suit against IMTT and Shell in the Civil District Court for the Parish of Orleans. In their original petition for damages, Plaintiffs asserted various state law claims alleging negligence, trespass, and violation of the terms of a servitude. (Rec. Doc. 1-6, p. 5-6). Plaintiffs seek damages for, amongst other things, personal injuries, loss of use and enjoyment of property, medical expenses, mental anguish, and diminution of property value. (Rec. Doc. 1-6, p. 6-7). On September 18, 2014, Plaintiffs filed their First Amended and Supplemental Petition for Damages, in which they included class action allegations and sought damages

2

on behalf of all unnamed parties similarly situated as Plaintiffs.

On October 17, 2014, Defendants jointly removed Plaintiffs' lawsuit to this Court, alleging federal jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendants assert that they have met the requirements for removal pursuant to CAFA because the putative class exceeds one hundred persons, minimal diversity under CAFA is satisfied, and the aggregate damages sought by the class exceed $5 million.

Plaintiffs then filed the instant motion requesting that the Court remand the matter to the Civil District Court for the Parish of Orleans, on the basis that this matter lacks federal jurisdiction. Plaintiffs specifically refute that Defendants have satisfied their burden of proving that the jurisdictional amount exceeds the requisite $5 million and also assert that the "local controversy exception" to CAFA mandates remand of this matter.

## LEGAL STANDARD & DISCUSSION

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of establishing that federal jurisdiction exists at the time of removal. *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408

(5th Cir. 1995). Ambiguities are construed against removal and in favor of remand, because removal statutes are to be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

Congress enacted CAFA to provide for the "removal of class actions involving parties with minimal diversity." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008). In order to justify removal pursuant to CAFA: (1) the class action must involve an aggregate amount in controversy in excess of $5 million; (2) there must exist minimal diversity between the parties; and (3) the class must include at least one hundred members. *Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.*, 609 F.Supp.2d 594, 600 (E.D. Tex. 2009). In order to satisfy minimal diversity, any member of a class of plaintiffs must be a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A).

Plaintiffs do not challenge that Defendants have satisfied the requirements for proving minimal diversity and the size of the putative class, and instead allege only that Defendants have failed in satisfying their burden of proving that the jurisdictional amount requirement has been satisfied. Plaintiffs additionally argue that even if the jurisdictional amount is

4

found to be satisfied, remand is mandated pursuant to the local controversy exception.

A. **Jurisdictional Amount**

Pursuant to CAFA, in circumstances where the plaintiff class fails to allege a specific quantity of damages, the burden falls to the removing defendant to prove that the amount in controversy requirement is satisfied by a preponderance of the evidence. *Berniard v. Dow Chem. Co.*, 481 F.App'x 859, 862 (5th Cir. 2010) (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)). The defendant may satisfy this burden by: "(1) Adduc[ing] summary judgment evidence of the amount in controversy, or (2) demonstrat[ing] that, from the class plaintiff's pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met." *Id*. Once the defendant "has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id*.

Defendants first assert that it is facially apparent from Plaintiff's amended complaint that the jurisdictional amount is satisfied. (Rec. Doc. 23, p. 6). In order to satisfy this requirement, a defendant is not required to prove the jurisdictional amount to a legal certainty, and need only demonstrate that the claim "more likely than not" meets the

jurisdictional amount requirement. *Nolan v. Exxon Mobil Corp.*, No. 13-439, 2013 WL 6194621, at *2 (M.D. La. Nov. 26, 2013). Defendants assert that it is more likely than not, judging from the face of Plaintiffs' complaint and considering the likely size of the class, the alleged injuries, and the damages sought by Plaintiffs, that the jurisdictional amount requirement will be satisfied. In response, Plaintiffs contest that the satisfaction of the jurisdictional amount is facially apparent and instead assert that Defendants' allegation of such is based on improper conclusory allegations rather than the actual information contained in the pleadings.

In determining whether a defendant has properly shown from the face of the plaintiff's pleadings that the jurisdictional requirement has been met, courts generally consider "the size of the class, the type, duration and severity of the harm alleged, and the types of compensatory damages sought." *Id*. (citing *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387-88 (5th Cir. 2009); *Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 545 (5th Cir. 2006); *Gordon v. Air Liquide-Big Three Inc.*, No. 12-396, 2013 WL 3490725 (M.D. La. July 10, 2013)). Defendants first rely on the expected size of the plaintiff class in support of their argument that the jurisdictional requirement is facially met. Defendants note that Plaintiffs' amended petition for damages

6

defines its class as "hundreds of similarly situated individuals" who "live, work and/or visit friends and family within the area of St. Rose affected by the release." (Rec. Doc. 23, p. 7). Defendants assert that this is an extremely conservative number, in light of the fact that census data indicates that 8,122 people reside in the area of St. Rose, and that the number of actual plaintiffs in the class can reasonably be estimated to be in the thousands. In response, Plaintiffs assert that Defendants cannot facially indicate that the class is composed of thousands of people when Plaintiffs' complaint asserts a class of only "hundreds." Moreover, Plaintiffs contend that Defendants' reliance on census data is purely speculative and unreliable and "does not take into account those who were actually injured by the chemical release." (Rec. Doc. 12-2, p. 9).

Defendants next note that the Court should consider the severity of the injuries alleged by Plaintiffs in determining whether the jurisdictional amount has been satisfied. In their amended petition, Plaintiffs assert medical injuries ranging from nausea to headaches to respiratory difficulties, as well as other injuries including "loss of wages to seek medical treatment, medical expenses, mental anguish, trespass to property, loss of use and enjoyment of property, and diminution

7

of property values." (Rec. Doc. 1-6, p. 4). Plaintiffs dispute that these injuries should be considered "severe," and instead argue that they are seeking only "usual and customary damages set forth by other plaintiffs in similar nuisance actions." (Rec. Doc. 12-2, p. 6).

Despite Plaintiffs' contentions, the face of their amended petition makes clear that the jurisdictional amount of $5 million has been satisfied. First, regardless of the exact number of individuals in the class, the class size will likely be substantial, ranging from either hundreds, as stated by Plaintiffs, to thousands, as estimated by Defendants. Moreover, despite not specifically alleging injuries attributable to any one Plaintiff, the injuries set forth in Plaintiffs' amended petition are severe. Plaintiffs first note in their amended complaint that exposure to the toxic fumes which they allege have been released by Defendants have been known to cause "serious health problems," including respiratory difficulties as well as "increased risks for lung, stomach, [and] skin cancers and leukemia." (Rec. Doc. 1-6, p. 12). Plaintiffs go on to state that they have actually suffered medical injuries, including respiratory problems, and substantial property damage from continued exposure to the fumes. Plaintiffs also seek a variety of damages, not limited to medical expenses, diminution of

8

property value, mental anguish, and loss of use and enjoyment of property. (Rec. Doc. 1-6, p. 6).

Prevalent jurisprudence within the Fifth Circuit supports Defendants' argument that the pleadings facially reflect that the jurisdictional amount has been met. In *Frazier v. Pioneer Americas, LLC*, a class of approximately 500 plaintiffs alleged injuries resulting from exposure to mercury by the defendants for a two month period. 455 F.3d 542, 546 (5th Cir. 2006). The Court found it to be facially apparent from the pleadings that the jurisdictional amount had been met, despite the fact that the plaintiffs failed to allege specific injuries or request a specific amount of damages in their complaint. *Id*. The facts in *Frazier* are analogous to the present circumstances. The size of the class is potentially comparable, as Plaintiffs admit the class is at least composed of "several hundred" individuals. Moreover, similarly to *Frazier*, the fact that Plaintiffs did not allege specific injuries does not make them immune from removal. Instead, the severe injuries listed in Plaintiffs' alleged complaint are sufficient to support a finding that the jurisdictional amount has been met.

Because the Defendants have met their burden of proving by a preponderance of the evidence that the jurisdictional amount has been met, the burden now shifts to Plaintiffs to demonstrate

with legal certainty that they could not recover more than $5 million. *In re 1994 Exxon Chem. Fire*, 558 F.3d at 387. Plaintiffs have failed to meet this burden. Despite Plaintiffs' effort to distinguish every case relied upon by Defendants, mainly for relatively minute factual differences, Plaintiffs have failed to provide the Court with any case to support their contention that the damages they seek are "usual and customary" and thus do not rise to the level required to satisfy the jurisdictional amount requirement. Accordingly, the jurisdictional amount requirement of CAFA has been satisfied.

B. **Local Controversy Exception**

Plaintiffs assert that even if the Court determines the jurisdictional amount requirement to be met, CAFA does not supply federal jurisdiction to the matter at hand, because of the "local controversy exception." Pursuant to the local controversy exception, a Court shall decline to exercise jurisdiction:

> (i) Over a class action in which --
>   (I) Greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>   (II) At least 1 defendant is a defendant –
>     (aa) from whom significant relief is sought by members of the plaintiff class;
>     (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

     (cc) who is a citizen of the State in which the action was originally filed; and
  (III) Principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
 (ii) During the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A). The only factor of the local controversy exception which is in dispute by the parties is whether one defendant, IMTT, is a citizen of Louisiana. Plaintiffs bear the burden of proving that the local controversy exception to CAFA applies.[1] *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 361 (5th Cir. 2011). The Fifth Circuit has recognized that the local controversy exception is intended to be a narrow one, "with all doubts resolved in favor

---

[1] In their Motion, Plaintiffs submit that the burden falls to Defendants to show that the local controversy exception does not apply, because "the burden of proof is on the party invoking federal jurisdiction if diversity is challenged." (Rec. Doc. 12-2, p. 13). However, in support of this, Plaintiffs rely solely on cases in which removal is based on traditional diversity jurisdiction pursuant to 28 USC § 1332(a). *See Cabiran v. Baer*, No. 09-7694, 2010 WL 2360606 (E.D. La. June 7, 2010) (Lemelle, J.) (Recognizing that the burden falls to the removing party to defend diversity jurisdiction when such is challenged in a case removed on the basis of traditional diversity jurisdiction). Contrary to Plaintiffs' assertions, the Fifth Circuit has clearly and repeatedly recognized that the burden falls to the party seeking remand to establish that an exception to CAFA applies. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) ("[P]arties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction" and "the party moving for remand must prove the statutory citizenship requirement by a preponderance of the evidence."); *Frazier*, 455 F.3d at 546 (Finding that the "longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA.").

of exercising jurisdiction over the case." *Id*. (citing *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *Westerfield Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)).

In considering whether the local controversy exception applies, "the jurisdictional facts that support removal must be judged at the time of removal." *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854-JJB-SCR, 2011 WL 4737197, at *2 (M.D. La. Sept. 14, 2011). For purposes of traditional diversity jurisdiction, the citizenship of a general partnership is determined by the citizenship of the partnership's constituent partners. *Int'l Paper Co. v. Denkmann Assocs.*, 116 F.3d 134, 137 (5th Cir. 1997); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 393 (5th Cir. 1991). However, for purposes of the local controversy exception, CAFA instructs that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332. Neither party disputes that as a general partnership, IMTT is a citizen of Delaware, having been organized under the laws of Delaware. (Rec. Doc. 12-2, p. 12; Rec. Doc. 23, p. 18). Thus, the determination of IMTT's citizenship, and the application of the local controversy

exception, turns on the location of IMTT's principal place of business.

The test for determining the location of a company's principal place of business was developed in *Hertz Corp. v. Friend*, in which the Supreme Court of the United States determined that the term "principal place of business" "is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," also known as the company's "nerve center." 559 U.S. 77, 92-93 (2010). The Supreme Court further recognized that this should be the place "where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Id*. at 93.

Plaintiffs contend that IMTT is a citizen of the state of Louisiana, because its principal place of business is located in New Orleans. In support of this contention, Plaintiffs rely heavily on IMTT's company website, which declares that the company is "headquartered in New Orleans," and which allegedly advises that three out of five of its listed corporate executives live and work in New Orleans. Plaintiffs also request that the Court allow for additional limited discovery on the

13

issue of IMTT's citizenship before definitively ruling on its Motion to Remand. Plaintiffs submit that they have not yet been afforded the opportunity to conduct discovery on this issue and denying them the opportunity to do so would "essentially strip Plaintiffs of their chance to prove the 'local controversy exception.'" (Rec. Doc. 12-2).

In response, Defendants do not address Plaintiffs' request for additional discovery, however, they submit that Plaintiffs have failed to satisfy their burden of proving that IMTT is a citizen of Louisiana. Defendants maintain that IMTT's principal place of business is New York. Defendants advise the Court that in July 2014, shortly prior to the removal of this matter in October 2014, the Macquarie Infrastructure Company, LLC ("MIC"), which is headquartered in New York City, acquired full ownership of IMTT. (Rec. Doc. 23, p. 19). In support of this contention, Defendants have provided the Court with several of MIC's filings with the Securities and Exchange Commission, which they allege show that MIC began exercising full direction, control, and coordination of IMTT as early as September 2014. (Rec. Doc. 23, p. 20). Because at the time of removal, IMTT was entirely controlled and operated by MIC, who Defendants claim undisputedly has its principal place of business in New York,

14

Defendants argue that it logically follows that IMTT's principal place of business is also New York.

Because at this stage in the proceedings the Court lacks sufficient evidence to determine whether IMTT should be classified as a citizen of Louisiana, Plaintiffs will be permitted to engage in additional discovery, strictly limited to the issue of the location of IMTT's principal place of business. Said discovery must be completed within sixty days of the date of this Order. Following this, Plaintiffs may re-urge their Motion to Remand and the parties may submit a supplemental memorandum in support of their arguments as to whether this matter should be remanded pursuant to the local controversy exception to CAFA.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion to Remand* (**Rec. Doc. 12**) is **DENIED WITOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiffs are permitted to conduct additional discovery strictly limited to the issue of IMTT's principal place of business. Said discovery must be completed within sixty days of the date of this Order.

**IT IS FURTHER ORDERED** that following the close of this limited discovery, Plaintiffs may re-urge their Motion to Remand

and each party may submit a supplemental memorandum, not to exceed ten (10) pages, in support of their arguments as to whether this matter should be remanded pursuant to the local controversy exception to CAFA.

New Orleans, Louisiana this 2nd day of June, 2015.

                                        _____
                                        CARL J. BARBIER
                                        UNITED STATES DISTRICT JUDGE